

YAAKOV SAKS▲*
JUDAH STEIN▲
RAPHAEL DEUTSCH ^
RACHEL DRAKE ▪
DAVID FORCE▲

▲ NJ & NY Bar Admissions
^ CT & NJ Bar Admissions
▪ NJ Bar Admission
*Federal Court Bar Admissions
CO, TX, WI, MO, NE, NM, IL, ND, MI, CT, AR, TN

285 Passaic Street, Hackensack, NJ 07601 | tel: 201.282.6500 | fax: 201.282.6501 | www.steinsakslegal.com

July 27, 2021

Judge Cathy Seibel
Southern District of New York
300 Quarropas St
White Plains, NY 10601

      **Re:**    *Kola v. Forster & Garbus, LLP* **Case No: 7:19-cv-10496-CS**
            **Plaintiff's Add'l Briefing on *Ramirez***

Dear Judge Seibel:

      We represent the Plaintiff, Age Kola, in the above referenced action, and write in response to the Court's July 13, 2021 order that Plaintiff respond on the issues of standing light of the Supreme Court's decision in *TransUnion LLC v. Ramirez*, 210 L. Ed. 2d 568, 141 S. Ct. 2190 (2021).

      In short, Plaintiff has standing because the Defendant's letter exposed the Plaintiff to a material risk of harm of a protected interest under the statute which materialized into actual tangible harm. Plaintiff received a collection letter regarding a static judgment debt that contained a different balance than all the previous letters she received from Defendant. There was no explanation whatsoever for the discrepancy. Plaintiff was confused by the discrepancy and as a result did not respond or make payment on the debt, consulted a lawyer, and was subject to post-judgment interest that otherwise could have been avoided. Plaintiff specifically chose not to pay on the debt as a result of Defendant's deceptive debt collection practices. *See* Plf.'s Dep., attached as Ex. H to Plaintiff's Motion for Summary Judgment, at 22, ll. 9-25; *see also Id.* at 23, ll. 2-24; *see also Id.* at 30, ll. 2-19; *see also Id.* at 31, ll. 2-25; *see also Id.* at 32, ll. 2-4; *see also Id.* at 33, ll. 4-23. Plaintiff was therefore subject to post-judgment interest that otherwise could have been avoided. In other words, the material risk of harm has turned into actual, tangible harm. *Ramirez* acknowledges that there might be standing if "the exposure to the risk of harm itself causes a separate concrete harm" (210 L. Ed. 2d at 591, emphasis in original). Far from adversely affecting Plaintiff's claim, *Ramirez* only reinforces it.

      *Ramirez* specifically rejected the material risk of harm analysis for the 6,332 class members who were improperly designated as terrorists in Transunion's OFAC database because they could not prove their credit reports had been disseminated to a third-party creditor. *Ramirez*, 210 L. Ed.

2d at 592 ("Here, the 6,332 plaintiffs did not demonstrate that the risk of future harm materialized— that is, that the inaccurate OFAC alerts in their internal TransUnion credit files were ever provided to third parties or caused a denial of credit."). Here, there is no question that Plaintiff has suffered a material risk of harm due to the confusion created by the letter, thereby causing an actual, tangible imposition of post-judgment interest that continued to accrue after her failure to pay the debt – a failure that is directly attributable to Defendant's deceptive debt collection practices.

Defendant's argument that Plaintiff would not have paid anyway is misplaced because Plaintiff repeatedly emphasized throughout her deposition that she was reluctant to pay on the debt because it was unclear to her the actual amount that she owed, not because she lacked the necessary funds. *See supra*, at 1.

Nor does it help that Defendant alleges they would have accepted the lower amount stated in the collection letter. That position was implicitly rejected in *Cortez v. Forster & Garbus, LLP*, 999 F.3d 151 (2d Cir. 2021). *Cortez* held that any settlement offer has to be clear and unequivocal in order to satisfy *Avila*'s disclosure requirements that payment of a specific amount by a specified date will satisfy the obligation. *See Cortez*, 999 F.3d at 156 ("Therefore, a settlement offer need not enumerate the consequences of failing to meet its deadline or rejecting it outright so long as it *clearly and accurately* informs a debtor that payment of a specified sum by a specified date will satisfy the debt.")(emphasis added).

The violation letter at issue does not state in clear, unequivocal terms that Defendant would accept the lower amount in full satisfaction of the debt. *See* August 5, 2018 letter, attached as Exhibit A to Plaintiff's Motion for Summary Judgment. Plaintiff did not know of any internal policies of Defendant when she received this letter. She only had the letter in front of her that contained a balance that for some unknown reason was different than the balances she had previously seen. As a result, she was confused by the discrepancy and did not respond or make payment on the debt, consulted a lawyer, and was subject to post-judgment interest that otherwise could have been avoided.

Even assuming that the material risk had not resulted in tangible harm to Plaintiff, Defendant's violation of §§ 1692e(2)(A) and e(10) is sufficient to establish Article III standing on its own due to the unique characteristics of the Fair Debt Collection Practices Act ("FDCPA"). Since *Spokeo* was decided, a litany of courts across the country have found Article III standing in the context of 1692e violations irrespective of any additional harm suffered by the plaintiff. *See Guerrero v. GC Servs. Ltd. P'ship*, No. CV 15-7449 (DRH) (AKT), 2017 U.S. Dist. LEXIS 42884, at *29-33 (E.D.N.Y. Mar. 23, 2017)("[T]he majority of post-*Spokeo* decisions which have analyzed standing within the context of the FDCPA have determined that … the FDCPA creates a *substantive right*, the violation of which would itself give rise to a concrete injury.")(emphasis in original)(citing cases); *see also Feldheim v. Fin. Recovery Servs.*, 257 F. Supp. 3d 361, 370-71 (S.D.N.Y. 2017)("[T]he majority of post-*Spokeo* decisions that have analyzed standing under the FDCPA have found that alleging a use [of] any false, deceptive, or misleading representation or means in connection with the collection of any debt, establishes a concrete injury.'")(quoting *Bautz v. ARS Nat'l Servs.*, 226 F. Supp. 3d 131, 145 (E.D.N.Y. 2016))).

These cases reason that "§ 1692e confers a substantive right: 'By enacting the FDCPA,

Kola v. Forster & Garbus, LLP, Plaintiff's Add'l Briefing on *Ramirez*

Congress permissibly created a right – the right to be free from false, deceptive, or misleading practices by debt collectors – for which a violation constitutes a particularized injury.'" *Williams v. Rushmore Loan Mgmt. Servs.*, No. 3:15-cv-673 (RNC), 2018 U.S. Dist. LEXIS 55151, *14 (D. Conn. Mar. 31, 2018)(quoting *Remington v. Fin. Recovery Servs.*, No. 3:16-cv-865 (JAM), 2017 U.S. Dist. LEXIS 36637, at *5 (D. Conn. Mar. 15, 2017)).

In this vein, courts have drawn a clear dividing line between the Fair Credit Reporting Act ("FCRA"), which creates a host of procedural rights the violation of which requires a showing of some additional harm or material risk of harm, and the substantive rights provided for under the FDCPA. *Bautz*, 226 F. Supp. 3d at 144-45 ("Moreover, the FDCPA provision at issue here—15 U.S.C. § 1692e—differs from the FCRA section discussed in *Spokeo*, which 'imposes a host of [procedural] requirements concerning the creation and use of consumer reports' that consumer reporting agencies must follow…[,]'")

Both *Spokeo* and *Ramirez* dealt specifically with a "host of procedural requirements" under the FCRA. Unlike the FDCPA, the FCRA only protects the underlying concrete interest – accuracy of credit reports – through these procedural requirements. Therefore, a showing of additional harm is required under the FCRA, whereas under the FDCPA it is not. Moreover, the FDCPA provisions at issue here, §§ 1692e(2)(A) and e(10), are not the type of disclosure provisions that now require a showing of additional harm under *Ramirez*. *See Ramirez*, 210 L. Ed. 2d at 594 ("An asserted informational injury that causes no adverse effects cannot satisfy Article III.")(citations omitted)(discussing public disclosure laws).

The Second Circuit recently affirmed this distinction in *Maddox v. Bank of N.Y. Mellon Tr. Co., N.A.*, 997 F.3d 436, 447 (2d Cir. 2021)("[W]e view the satisfaction-of-mortgage statutes as substantive provisions that protect concrete interests of a type traditionally recognized and protected at common law—not mere 'procedural' rights which, if violated, must be accompanied by further allegations of harm before a concrete injury is established."). Moreover, the reasoning in *Maddox* withstands *Ramirez* because a mortgagee's failure to timely file a certificate of discharge, the statutory violations at issue, wrongly "conveys to the world that the borrower owes a debt secured by a property." *Compare Maddox, N.A.*, 997 F.3d at 446-47 *with Ramirez*, 210 L. Ed. 2d at 592 ("the 6,332 class members whose internal TransUnion credit files were not disseminated to third-party businesses did not suffer a concrete harm.")

As in *Ramirez*, *Maddox* compared the violations to the common law torts of libel and slander, which was completed by the failure to record the discharge in public records. *Maddox, N.A.*, 997 F.3d at 446-47. So too here, violations of § 1692e have been widely recognized as resembling common law fraud, *see Bautz*, 226 F. Supp. 3d at 144, which, unlike FCRA violations, is completed by the debtor's receipt of the letter, without the need to make any additional showing that the information was published to the outside world.

Respectfully submitted,
 /s/Raphael Deutsch
Raphael Deutsch