UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------------x
AGE KOLA, individually and on behalf of all
others similarly situated,

                              Plaintiff,                          **OPINION & ORDER**

        - against -                                               No. 19-CV-10496 (CS)

FORSTER & GARBUS LLP and
JOHN DOES 1-25,

                              Defendants.
---------------------------------------------------------------x

Appearances:

Kenneth Willard
Raphael Deutsch
Stein Saks, PLLC
Hackensack, NJ
*Counsel for Plaintiff*

Robert L. Arleo
Robert L. Arleo, Esq., P.C.
New York, NY
*Counsel for Defendant*

Seibel, J.

        Before the Court are the parties' cross-motions for summary judgment.  (Docs. 33, 42.)

For the following reasons, Defendant's motion is GRANTED and Plaintiff's motion is DENIED.

I.      **BACKGROUND**

        This Fair Debt Collection Practices Act ("FDCPA") dispute arises out of an allegedly

misleading debt collection letter sent to Plaintiff by Defendant Forster & Garbus LLP.

A.      **Facts**

The following facts are based on the parties' Local Civil Rule 56.1 Statements,

responsive 56.1 Statements,[1] declarations, and supporting materials.  The facts are undisputed

except as noted.

Plaintiff took out a credit card with Barclays Bank Delaware ("BBD") and accrued

charges that she failed to pay due to "financial stresses."  (Doc. 37 ("P's 56.1 Stmt.") ¶¶ 1-3; *see*

Doc. 37-8 ("Kola Dep.") at 20:9-21:7, 23:5-12.)  BBD brought suit in the New York Supreme

Court, County of Rockland, and obtained a default judgment against the Plaintiff for $4,225.74

on June 20, 2018.  (Doc. 37-2; P's 56.1 Resp. ¶ 3.)  Defendant served as counsel for BBD in that

lawsuit and sent collection letters to Plaintiff after BBD obtained the default judgment.  (P's 56.1

Resp. ¶¶ 2, 4.)  Defendant is a debt collector as defined in the FDCPA, 15 U.S.C. § 1692a(6).

(Doc. 1 ("Complaint") ¶ 10; Doc. 15 ("Amended Answer") ¶ 9.)

Defendant sent collection letters to Plaintiff on June 21, 2018, July 25, 2018, August 29,

2018, and October 3, 2018, all of which stated that the balance due was $4,225.74.  (Docs. 37-3,

37-4, 37-5, 37-6, 37-7.)  One of the letters indicated that non-payment could result in judgment

enforcement proceedings under article 52 of the New York Civil Practice Law and Rules, (P's

56.1 Stmt. ¶ 6; Doc. 37-3), and another stated that Defendant was searching for assets with which

to satisfy the judgment, (P's 56.1 Stmt. ¶ 7; Doc. 37-4).  On February 8, 2019, Defendant sent a

letter that explained that Defendant had been authorized to offer a settlement at a "substantial

discount off the balance due"; the offer was for Plaintiff to settle the debt for "[o]ne payment of

---

[1] Plaintiff responded to Defendant's Rule 56.1 statement in support of its motion, (Doc.
45 ("P's 56.1 Resp.")), but Defendant did not respond to Plaintiff's 56.1 statement in support of
her motion.  As such, properly supported facts in Plaintiff's 56.1 statement are deemed admitted.

$3,169.31" which was due by February 28, 2019.  (P's 56.1 Stmt. ¶ 10; Doc. 37-7.)  That letter

also reflected that the full balance due was $4,225.74.  (Doc. 37-7.)

On August 5, 2019, Defendant sent a collection letter that stated the balance due was

$3,996.74.  (Doc. 37-1 ("August 5 Letter"); *see* P's 56.1 Stmt. ¶ 11.)  The August 5 Letter stated:

"We have previously tried to reach you.  Please contact our office upon receipt of this letter with

regard to the above matter."  (August 5 Letter.)  Defendant has submitted evidence that the

amount of the debt was reduced to $3,996.74 because BBD decided not to pass on certain costs

awarded with the judgment to consumers, and that payment of that amount would have satisfied

Plaintiff's debt in total.  (D's 56.1 Stmt. ¶¶ 5, 7; Doc. 39 ¶ 4; Doc. 40 ("Garbus Aff.") ¶¶ 7-8.)[2]

The August 5 Letter, which was not phrased as a settlement offer, did not include any

explanation for the lower balance as compared to previous communications, (August 5 Letter),

and there is no evidence that Defendant provided any such explanation prior to this lawsuit.

Plaintiff has not made any payment on the debt owed to BBD.  (P's 56.1 Stmt. ¶ 12; Kola

Dep. at 39:10-12.)  At her deposition, Plaintiff testified that she did not know whether she owed

the money reflected in the judgment because she did not know if the charges were all hers.

(Kola Dep. at 22:9-23:24, 30:14-31:11, 31:19-32:4.)  In explaining her uncertainty about whether

the charges were hers, she stated that "there's something off" because "one [letter] says one and

another [letter] says another."  (*Id.* at 22:13-22.)  She explained that she called her lawyer in

response to the August 5 Letter because she did not know what to do and got "anxious" because

she "d[id]n't know how to handle it."  (*Id.* at 30:4-13.)  In response to questioning about whether

---

[2] Although Plaintiff purports to deny these facts, (*see* P's 56.1 Resp. ¶¶ 5-7), she does not elaborate on this denial or support it with any admissible evidence.  Thus, these facts are deemed admitted under Local Rule 56.1(d).

she intended to pay the debt, Plaintiff stated that she needed to know the accurate amount and did

not want to pay charges that were not hers to pay.  (*Id.* at 33:4-22.)

At the same deposition, Plaintiff also conceded that she had used the credit card and

could not pay for it.  (*Id.* at 23:5-12.)  She stated that, at the time she received the August 5

Letter and at the time she received the previous letters, she lacked the financial means to pay the

debt owed to BBD, regardless of which amount was correct.  (*Id.* at 37:7-10, 44:20-45:20.)

When asked what she would do "if the defendant produced all of your purchase statements and

demonstrated to you that you do owe this amount of money," Plaintiff responded that she would

still not be able to pay the debt because she lacked the means to do so.  (*Id.* at 48:20-25.)

**B.      Procedural History**

Plaintiff brought this suit on November 12, 2019, asserting claims on behalf of herself

and others similarly situated under FDCPA Sections 1692e[3] and 1692f[4] against Defendant

Forster & Garbus LLP as well as "John Does 1-25."[5]  (Complaint ¶¶ 12-20, 40-49.)  The class

alleged in the Complaint was to consist of individuals in New York to whom Defendant had sent

a collection letter containing, without explanation, a different balance than previous

communications.  (*Id.* ¶ 13.)  Plaintiff has not sought to certify a class in this case.  Nor has

Plaintiff sought to name any additional parties as defendants.

---

[3] 15 U.S.C. § 1692e prohibits a debt collector from using "any false, deceptive, or misleading representation or means in connection with the collection of any debt."

[4] 15 U.S.C. § 1692f prohibits a debt collector from using "unfair or unconscionable means to collect or attempt to collect any debt."

[5] The Complaint states the John Does are named as a placeholder for "Defendants whose identities will be disclosed in discovery and should be made parties to this action."  (Complaint ¶ 11.)

Defendant first answered the complaint on December 19, 2019, (Doc. 6), and subsequently sought leave to amend its answer to include an additional affirmative defense. The Court granted leave, (*see* Minute Entry dated Jan. 16, 2020), and Defendant filed its Amended Answer on January 23, 2020, (Doc. 15). The parties engaged in discovery for approximately six months, after which Defendant sought a briefing schedule for its summary judgment motion. (Doc. 18.) The Court held a pre-motion conference on July 22, 2020, after which Plaintiff submitted a letter stating her intention to cross-move for summary judgment. (Doc. 22.)

On January 29, 2021, after the instant cross-motions were fully briefed, Defendant sought leave to re-open briefing to add an additional argument challenging Plaintiff's Article III standing based on several out-of-circuit decisions, some of which were issued in December 2020 and January 2021. (Doc. 50.) Plaintiff responded on February 1, 2021, arguing that the Court should not permit additional briefing due to the clarity of Second Circuit law on standing, which would not be affected by the cases raised in Defendant's letter. (Doc. 51.) The Court granted Defendant's request, noting that this was a fast-developing area of law. (Doc. 52.) Defendant filed its supplemental letter brief on February 4, 2021, (Doc. 53), but subsequently submitted a request to withdraw both that letter and the request to add the standing argument, (Doc. 54).[6] Plaintiff nonetheless submitted a letter in setting out her argument in favor of standing on March 1, 2021. (Doc. 55.)

On July 13, 2021, Defendant wrote to the Court, in the wake of the Supreme Court's decision in *TransUnion, LLC v. Ramirez*, 141 S. Ct. 2190 (2021), to state its position that under

---

[6] Defendant's counsel explained that due to a good-faith misunderstanding, he erroneously believed that *Cohen v. Rosicki, Rosicki & Assocs., P.C.*, 897 F.3d 75 (2d Cir. 2018) – cited by Plaintiff in support of standing in her February 1 and March 1 letters, (Docs. 51, 55) – was a non-binding summary order from the Second Circuit.

*TransUnion*, Plaintiff does not have Article III standing in this case, and to note that a judge in

the Eastern District of New York had issued orders to show cause to FDCPA plaintiffs regarding

standing.  (Doc. 58.)  The Court directed Plaintiff to respond by letter, (Doc. 59), and she did so,

(Doc. 60).

## II.    LEGAL STANDARD

### A.    Standing

Article III of the Constitution limits a federal court's jurisdiction to actual "Cases" and

"Controversies."  U.S. Const. art. III, § 2; *see Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560

(1992).  "Constitutional standing is the threshold question in every federal case, determining the

power of the court to entertain the suit."  *Leibovitz v. N.Y.C. Transit Auth.*, 252 F.3d 179, 184 (2d

Cir. 2001) (cleaned up).  That is, where a party lacks standing to bring a claim, the court lacks

subject matter jurisdiction over that claim and must dismiss it.  *See SM Kids, LLC v. Google

LLC*, 963 F.3d 206, 210 (2d Cir. 2020).

"The objection that a federal court lacks subject-matter jurisdiction may be raised by a

party, or by a court on its own initiative, at any stage in the litigation, even after trial and the

entry of judgment."  *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 506 (2006) (cleaned up).  Under Rule

12(h)(3), "[i]f the court determines at any time that it lacks subject-matter jurisdiction, the court

must dismiss the action."  Fed. R. Civ. P. 12(h)(3).

"A plaintiff must demonstrate standing 'with the manner and degree of evidence required

at the successive stages of the litigation.'"  *TransUnion*, 141 S. Ct. at 2208 (quoting *Lujan*, 504

U.S. at 561).  While "[a]t the pleading stage, general factual allegations of injury resulting from

the defendant's conduct may suffice" to establish standing, on a motion for summary judgment

"the plaintiff can no longer rest on such 'mere allegations,' but must 'set forth' by affidavit or

other evidence 'specific facts'" that demonstrate standing.  *Lujan*, 504 U.S. at 561 (quoting Fed.

R. Civ. P. 56(e)).  "The party asserting jurisdiction . . . bears the burden of proof as to standing."

*Nat. Res. Def. Council, Inc. v. U.S. Food & Drug Admin.*, 710 F.3d 71, 79 (2d Cir. 2013), *as*

*amended* (Mar. 21, 2013).

### B.      Summary Judgment

Summary judgment is appropriate when "the movant shows that there is no genuine

dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed.

R. Civ. P. 56(a).  "[T]he dispute about a material fact is 'genuine' . . . if the evidence is such that

a reasonable jury could return a verdict for the nonmoving party."  *Anderson v. Liberty Lobby,*

*Inc.*, 477 U.S. 242, 248 (1986).  A fact is "material" if it "might affect the outcome of the suit

under the governing law . . . .  Factual disputes that are irrelevant or unnecessary will not be

counted."  *Id.*  On a motion for summary judgment, "[t]he evidence of the non-movant is to be

believed, and all justifiable inferences are to be drawn in his favor."  *Id.* at 255.

The same standard applies to cross-motions for summary judgment.  *See Morales v.*

*Quintel Ent., Inc.*, 249 F.3d 115, 121 (2d Cir. 2001); *C & A Carbone, Inc. v. County of Rockland*,

No. 08-CV-6459, 2014 WL 1202699, at *5 (S.D.N.Y. Mar. 24, 2014).  Generally, in deciding

cross-motions for summary judgment, "each party's motion must be examined on its own merits,

and in each case all reasonable inferences must be drawn against the party whose motion is under

consideration."  *Morales*, 249 F.3d at 121; *see Chartis Seguros Mex., S.A. de C.V. v. HLI Rail &*

*Rigging, LLC*, 3 F. Supp. 3d 171, 179 (S.D.N.Y. 2014).  But where, as here, the motion and

cross-motion seek a determination of the same issues, the Court may consider them together.

*Royal & Sun All. Ins., PLC v. E.C.M. Transp., Inc.*, No. 14-CV-3770, 2015 WL 5098119, at *2

(S.D.N.Y. Aug. 31, 2015); *Chartis Seguros*, 3 F. Supp. 3d at 179.

The movant bears the initial burden of demonstrating "the absence of a genuine issue of material fact," and, if satisfied, the burden then shifts to the non-movant to "present evidence sufficient to satisfy every element of the claim." *Holcomb v. Iona Coll.*, 521 F.3d 130, 137 (2d Cir. 2008). "The mere existence of a scintilla of evidence in support of the [non-movant's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-movant]." *Anderson*, 477 U.S. at 252. Moreover, the non-movant "must do more than simply show that there is some metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986), and "may not rely on conclusory allegations or unsubstantiated speculation," *Fujitsu Ltd. v. Fed. Express Corp.*, 247 F.3d 423, 428 (2d Cir. 2001) (cleaned up).

"A party asserting that a fact cannot be or is genuinely disputed must support the assertion by . . . citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . admissions, interrogatory answers, or other materials . . . ." Fed. R. Civ. P. 56(c)(1). Where a declaration is used to support or oppose the motion, it "must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the . . . declarant is competent to testify on the matters stated." *Id.* 56(c)(4); *see Major League Baseball Props., Inc. v. Salvino, Inc.*, 542 F.3d 290, 310 (2d Cir. 2008). In the event that "a party fails . . . to properly address another party's assertion of fact as required by Rule 56(c), the court may . . . consider the fact undisputed for purposes of the motion" or "grant summary judgment if the motion and supporting materials – including the facts considered undisputed – show that the movant is entitled to it." Fed. R. Civ. P. 56(e).

## III.   DISCUSSION

There are three constitutional standing requirements that every plaintiff must satisfy in order to invoke the jurisdiction of the federal courts:  (1) "an injury in fact (*i.e.*, a concrete and particularized invasion of a legally protected interest)"; (2) "causation (*i.e.*, a fairly traceable connection between the alleged injury in fact and the alleged conduct of the defendant)"; and (3) "redressability (*i.e.*, it is likely and not merely speculative that the plaintiff's injury will be remedied by the relief plaintiff seeks in bringing suit)."  *Sprint Commc'ns Co. v. APCC Servs., Inc.*, 554 U.S. 269, 273-74 (2008) (cleaned up).  These minimum requirements to invoke jurisdiction exist in all cases, separate and apart from whatever statutory standing requirements may exist in the laws under which a plaintiff has filed suit.  *See All. for Env't Renewal v. Pyramid Crossgates Co.*, 436 F.3d 82, 85-86 (2d Cir. 2006).  The party invoking federal jurisdiction bears the burden of establishing that it has standing to do so.  *Lujan*, 504 U.S. at 561.

Defendant's standing challenge here focuses on the "concrete-harm requirement" of the injury-in-fact inquiry.  *TransUnion*, 141 S. Ct. at 2204.  *TransUnion* explains that a concrete harm must have a "'close relationship' to a harm 'traditionally' recognized as providing a basis for a lawsuit in American courts."  *Id.* (quoting *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1549 (2016)).  Tangible harms, including "[m]onetary harms" are among those that "readily qualify as concrete injuries under Article III."  *Id.*  Intangible harms also may be concrete, provided they satisfy the "close relationship" analysis, in which the "inquiry [is] whether plaintiffs have identified a close historical or common-law analogue for their asserted injury."  *Id.*

Regarding statutory harms, *TransUnion* held that while Congress's views on whether a harm is sufficiently concrete "may be 'instructive,'" *id.* (quoting *Spokeo*, 136 S. Ct. at 1549), courts may not assume that the existence of a statutory prohibition or obligation automatically

elevates that prohibition or obligation to a harm that is concrete under Article III.  *Id.* at 2204-05.

"For standing purposes, therefore, an important difference exists between (i) a plaintiff's

statutory cause of action to sue a defendant over the defendant's violation of federal law, and

(ii) a plaintiff's suffering concrete harm because of the defendant's violation of federal law."  *Id.*

at 2205.  To establish standing a plaintiff must not only show that the defendant's conduct

violated a statute, but that the plaintiff was "*concretely harmed* by a defendant's statutory

violation."  *Id.* (emphasis in original).

　　　　*TransUnion* also held that the language in *Spokeo, Inc. v. Robins*, suggesting that "'the

risk of real harm' (or as the Court otherwise stated, a 'material risk of harm') can sometimes

'satisfy the requirement of concreteness,'" only applies in cases seeking injunctive relief.  *Id.* at

2210 (quoting *Spokeo*, 136 S. Ct. at 1549).  The majority in *TransUnion* found "persuasive" the

argument that "in a suit for damages," such as the instant case, "the mere risk of future harm,

standing alone, cannot qualify as a concrete harm – at least unless the exposure to the risk of

future harm itself causes a *separate* concrete harm."  *Id*. at 2210-11 (emphasis in original).

### A.　　**Harm to Tangible Interest**

　　　　Plaintiff argues that "Defendant's letter exposed Plaintiff to a material risk of harm of a

protected interest under the [FDCPA] which materialized into actual tangible economic harm"

that is cognizable for purposes of standing under *TransUnion*.  (Doc. 60 at 1.)  Plaintiff's counsel

asserts that Plaintiff "chose" not to pay the debt "as a result of Defendant's deceptive debt

collection practices."  (*Id.*)  Plaintiff asserts that this exposed her to "post-judgment interest that

otherwise could have been avoided."  (*Id.*)

　　　　Plaintiff has failed to set forth facts from which it could be reasonably inferred that her

failure to pay the debt was due to Defendant's communications.  Rather, in her deposition she

made plain that even if Defendant had cleared up her purported confusion about the amount of

the debt, she lacked the means to pay.  (Kola Dep. at 48:16-25.)[7]  Plaintiff also testified that no

matter what the correct amount was, she had no intention of attempting to pay the debt because

she did not have the means to do so.  (*Id.* at 44:20-45:3.)[8]  In short, Plaintiff was not going to pay

regardless of the contents of the letters she received from Defendant.  This testimony

demonstrates that any post-judgment interest (that is, the material harm claimed here) would

have accrued regardless of the August 5 Letter.  (*Id.*)[9]  The August 5 Letter left Plaintiff in no

worse financial position with regard to the debt than she would have been if it had never been

sent or had included an explanation of the different balances that eliminated Plaintiff's

confusion.

In light of Plaintiff's conceded inability to pay the debt, her testimony regarding her

purported confusion and uncertainty about whether she in fact owed the balance due or if some

of the charges were not hers, (*id.* at 22:9-23:24, 30:4-32:4), and her reluctance to pay any debt

that was not hers to pay, (*id.* at 33:8-12, 21-22), reflect only hypothetical, speculative concerns.

The possibility that Plaintiff may have been in a position to pay the debt at some point in the

future, and at that point might be harmed (in the form of accruing interest that she otherwise

---

[7] "Q.  Well, do you have the purchase statements for this credit card?  A.  No.  Q.  Okay. If the defendant produced all of your purchase statements and demonstrated to you that you do owe this amount of money, would you pay it?  A.  If I had the means.  I don't have the means."

[8] "Q.  Again, Ms. Kola, did you intend to pay this debt?  No matter which number, no matter which number, were you trying to pay this debt, yes or no?  A.  I couldn't pay the debt. Q.  Right, because you didn't have the means to pay, correct?  A.  Correct."

[9] The Court notes that there is no evidence in the record to support the proposition that Defendant was attempting to collect any post-judgment interest that may have been accruing on this debt.  The documentary evidence reflects that the balance due on the debt remained static and ultimately was reduced by over $200.  (*See* Docs. 45-1, 45-3, 45-4, 45-5, 45-6, 45-7.)

would have avoided) represents "the mere risk of future harm," which is insufficient to establish

standing in a suit for damages.  *TransUnion*, 141 S. Ct. at 2210-11.

## B.        Harm to Intangible Interest

Because Plaintiff has failed to establish that she has suffered a tangible harm, under

*TransUnion* she must demonstrate some other harm that bears a "'close relationship' to a harm

'traditionally' recognized as providing a basis for a lawsuit in American courts." *Id.* at 2204.

That is, Plaintiff must identify a "close historical or common-law analogue for [her] asserted

injury." *Id.*

*TransUnion* and cases decided since demonstrate that, where a key element of the

analogous common-law or historical harm is missing, the plaintiff lacks standing.  For example,

*TransUnion* involved two groups of plaintiffs suing under the Fair Credit Reporting Act

("FCRA") because they had been incorrectly labelled "potential terrorists" in TransUnion's

consumer credit files.  *Id.* at 2207-09.  TransUnion had sent the reports of some of the plaintiffs

to third parties, and the Court determined that those plaintiffs suffered a concrete harm, the

character of which "bears a sufficiently close relationship to the harm from a false and

defamatory statement." *Id.* at 2209.  Conversely, those plaintiffs whose reports were never

released to third parties had no standing.  *Id.* at 2210.  The Court explained that because the

element of disclosure or publication is a key part of the interests protected by defamation, "[t]he

mere presence of an inaccuracy in an internal credit file, if it is not disclosed to a third party,

causes no concrete harm." *Id*.

Post-*TransUnion*, the Sixth Circuit analyzed claims brought under FDCPA Sections

1692e(14) and 1692d(6).  *See Ward v. Nat'l Patient Acct. Servs. Sols., Inc.*, No. 20-5902, 2021

WL 3616067, at *3 (6th Cir. Aug. 16, 2021).  The plaintiff alleged that the debt collector "failed

to state its full name in voice messages," and sought to satisfy the standing requirements stated in

*TransUnion* by "comparing [his] alleged harm with the harm of invasion of privacy." *Id.* The

Sixth Circuit found that key elements of the analogous common-law claim were lacking, stating

that "the mere failure to provide certain information does not mirror an intentional intrusion into

the private affairs of another," and that the plaintiff "alleged in his complaint that [Defendant]'s

violation, i.e., the use of an abbreviated name, confused him, not that it invaded his privacy." *Id.*

Due to the lack of a close relationship between the plaintiff's alleged injuries and "traditional

harms," the court held that the plaintiff lacked standing. *Id.* at *4.[10]

Here, Plaintiff contends that the analogous harm to the FDCPA violations she alleges is

common-law fraud. (Doc. 60 at 3.) Given "Congress's rationale for enacting the FDCPA and

granting a right to be free from abusive debt practices," some courts have indeed recognized a

common-law analog to the "legally cognizable harms" of "fraudulent and negligent

misrepresentation." *Bautz v. ARS Nat'l Servs., Inc.*, 226 F. Supp. 3d 131, 144 (E.D.N.Y. 2016)

(cleaned up); *see Prindle v. Carrington Mortg. Servs., LLC*, No. 13-CV-1349, 2016 WL

4369424, at *8 n.9 (M.D. Fla. Aug. 16, 2016). The gravamen of Plaintiff's claims under

Sections 1692e(2)(A), 1692e(10), and 1692f is that she was harmed by an apparent

misrepresentation of the amount of her debt when she received a letter that reflected a balance

due that was lower than previous letters. Thus, the Court must determine whether the harm that

Plaintiff suffered here – namely, Plaintiff's confusion regarding the amount of a debt she could

---

[10] The *Ward* court went on to explain that "confusion alone is not a concrete injury for Article III purposes." *Id.* (citing *Garland v. Orlans, PC*, 999 F.3d 432, 437-38 (6th Cir. 2021) ("[C]onfusion does not have 'a close relationship to a harm that has traditionally been regarded as providing a basis for a lawsuit.'") (quoting *Spokeo*, 136 S. Ct. at 1549)).

not have paid – has a sufficiently close relationship to the harm addressed by misrepresentation

torts.

   With regard to fraudulent, or intentional, misrepresentation, "courts agree in substance

that the plaintiff must prove the following elements:  "(1) an intentional misrepresentation (2) of

fact (3) that proximately causes harm and (4) is material, (5) intended to induce and . . . does

induce reliance by the plaintiff, (6) which is reasonable or 'justifiable.'"  Dan B. Dobbs, Paul T.

Hayden & Ellen M. Bublick, The Law of Torts § 664 (2d ed. 2021).  As to negligent

misrepresentation, "most courts hold that in certain circumstances defendants are under a duty to

exercise reasonable care in making representations of fact that induce a transaction and

consequently can be liable for negligent misrepresentation in those circumstances."  *Id.* § 666.

"A representation is not actionable unless the plaintiff in fact relies upon it. . . .  [I]f the plaintiff

has not relied, the misrepresentation has caused no harm."  *Id.* § 671.

   Contrary to Plaintiff's argument, merely receiving a letter from a debt collector that was

confusing or misleading as to the amount owed does not demonstrate a harm closely related to

fraudulent or negligent misrepresentation – both of which require some form of reliance – where

the recipient's financial condition made the amount of money owed irrelevant.  As discussed

above, Plaintiff has failed to establish that she relied on the letter in making any decision about

paying the debt[11] – in fact, she had no decision to make in that regard due to her own financial

constraints.  (Kola Dep. at 44:20-45:3, 48:20-25.)  Moreover, while the letter may have caused

some confusion, it was not in fact a misrepresentation of the amount Plaintiff would have had to

---

[11] The Court notes that Plaintiff did testify that receiving the letter caused her to call her
lawyer and ultimately initiate this lawsuit.  (Kola Dep. at 30:4-13.)  That alone cannot be a
concrete injury sufficient to establish standing, or it would completely swallow the standing
analysis under Article III.  *See Ward*, 2021 WL 3616067, at *4.

pay to satisfy the debt.  (D's 56.1 Stmt. ¶¶ 5, 7; Garbus Aff. ¶¶ 7-8; *see* note 2 above).  This

brings Plaintiff's alleged injury even further from common-law fraud or negligent

misrepresentation.  Based on this reasoning, Plaintiff has failed to allege a concrete injury that is

cognizable under *TransUnion*.

Plaintiff suggests that the foregoing analysis is unnecessary because of differences

between the Fair Credit Reporting Act (the statute at issue in *TransUnion*) and the FDCPA.  (*See*

Doc. 60 at 2-3.)  Plaintiff cites a number of pre-*TransUnion* cases for the proposition that the

right protected by section 1692e is a "substantive right" – and that "in cases where a plaintiff

sues to enforce a substantive legal right conferred by statute, she has standing to pursue that

claim without need to allege a 'material risk of harm' because the infringement of that right

constitutes, in and of itself, a concrete injury.'"  *Bautz*, 226 F. Supp. 3d at 141.  *Bautz* relies on a

distinction between substantive and procedural statutory rights, distinguishing between "the

direct violation of a specific statutory interest that Congress has recognized – for example, the

right to truthful information in debt collection communications" from "an ancillary procedural

infraction that may or may not materially harm that interest," and finding that "[t]he former, if

sufficiently alleged, establishes concrete injury for purposes of Article III."  *Id.*; *see Feldheim v.*

*Fin. Recovery Servs., Inc.*, 257 F. Supp. 3d 361, 369 (S.D.N.Y. 2017).  Likewise, the Second

Circuit held, prior to *TransUnion*, that Section 1692e of the FDCPA "protect[s] an individual's

concrete interests, so that an alleged violation of these provisions satisfies the injury-in-fact

requirement of Article III."  *Cohen*, 897 F.3d at 81; *see Zirogiannis v. Seterus, Inc.*, 707 F.

App'x 724, 727 (2d Cir. 2017) (summary order); *Papetti v. Does*, 691 F. App'x 24, 26 (2d Cir.

2017) (summary order).

But *TransUnion* suggests that it is impermissible for courts to rely on the conclusion that any violation of a given statute automatically establishes standing absent a more searching analysis of the injury.  *See TransUnion*, 141 S. Ct. at 2205 ("[A]n important difference exists between (i) a plaintiff's statutory cause of action to sue a defendant over the defendant's violation of federal law, and (ii) a plaintiff's suffering concrete harm because of the defendant's violation of federal law.").  Because "[u]nder Article III an injury in law is not an injury in fact," analysis of each plaintiff's injury is required, and "[o]nly those plaintiffs who have been *concretely harmed* by a defendant's statutory violation may sue that private defendant over that violation in federal court."  *Id.* (emphasis in original).  Similarly, "Congress's creation of a statutory prohibition or obligation and a cause of action does not relieve courts of their responsibility to independently decide whether a plaintiff has suffered a concrete harm under Article III," and courts may not "treat an injury as 'concrete' for Article III purposes based only on Congress's say-so."  *Id.* (cleaned up).  Given these principles, Plaintiff's citation to pre-*TransUnion* cases and her attempts to distinguish the FCRA provisions at issue in *TransUnion* from the FDCPA provisions here are unavailing.  *See Ward*, 2021 WL 3616067, at *2-3 (recognizing that *TransUnion* abrogated the Sixth Circuit's prior holding – similar to the Second Circuit's in *Cohen*, 897 F.3d at 81-82 – that the concreteness requirement was met where FDCPA violations created a material risk of harm to interests recognized by Congress in enacting the FDCPA).

Plaintiff's failure to establish a concrete harm sufficient to establish standing deprives this Court of subject matter jurisdiction over her claims.  Accordingly, Plaintiff's claims must be dismissed.

## IV.     CONCLUSION

For the foregoing reasons, Defendant's motion is GRANTED and Plaintiff's motion is

DENIED.  The Clerk of Court is respectfully directed to terminate the pending motions, (Docs.

33, 42), and close the case.

**SO ORDERED.**

Dated: September 10, 2021
         White Plains, New York

_____
CATHY SEIBEL, U.S.D.J.

17